UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RANDY CHARLTON, | ) | Case No. 1:07CV35 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | Magistrate Judge George J. Limbert |
| vs. | ) | |
| | ) | |
| MAGGIE BEIGHTLER, Warden, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Respondent. | ) | |

On January 5, 2007, Randy Charlton ("Petitioner"), through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF Dkt. #1. Petitioner is a prisoner at the Marion Correctional Institute seeking relief from his Ohio state court conviction for possession of cocaine with a major drug offender specification. *Id.* On January 24, 2007, the case was assigned to the undersigned for a report and recommendation. ECF Dkt. #6. On March 30, 2007, Maggie Beightler ("Respondent") filed a return of writ. ECF Dkt. #10. On July 20, 2007, Petitioner filed a traverse. ECF Dkt. #16. For the following reasons, the undersigned recommends that the Court GRANT the petition and REMAND the case to the Ohio Court of Common Pleas for RESENTENCING.

I.      **FACTUAL AND PROCEDURAL HISTORY**

A.      **State Trial Court Proceedings**

On September 22, 1998, the Lorain County, Ohio Grand Jury issued an indictment charging Petitioner with: (Count One) possession of crack cocaine in an amount exceeding one hundred grams, in violation of Ohio Revised Code (O.R.C.) § 2925.11(A), with a specification that Petitioner was a major drug offender as defined in O.R.C. § 2929.01(Y) and a specification that Petitioner owned, possessed, or had an interest in U.S. currency obtained in the commission of the felony drug offense; (Count Two) possession of drug paraphernalia, in violation of O.R.C. § 2925.14; (Count Three) possession of criminal tools, in violation of  O.R.C. § 2923.24(A); and

(Count Four) possession of marijuana, in violation of O.R.C. § 2925.11(A).  ECF Dkt. #9, Ex. A.  Petitioner filed a notice of intent to present an entrapment defense.  ECF Dkt. #9, Ex. F at 3.  On December 21, 1999, the day of Petitioner's trial, Petitioner's attorney informed the trial court that he would be calling Daryl Davis as an essential witness to the entrapment defense.  *Id*.  The trial court stated that it was Petitioner's burden to establish the relevance of Davis's testimony.  *Id*.  The trial judge told defense counsel, "if you're going to present an affirmative defense of entrapment, then I want to hear what your client has to say on the stand under oath."  *Id*.  After Petitioner testified, the judge stated that he believed Petitioner had confessed to the crime and that he would not allow Petitioner to call Davis as a witness in front of the jury.  *Id*. at 4.  After a court recess, Petitioner entered a plea of no contest to the charges in the indictment.  ECF Dkt. #9, Ex. B.  Following his plea, Petitioner fled the jurisdiction and was later apprehended in Georgia.  ECF Dkt. #10 at 2.[1]  On October 5, 2000, a common pleas judge sentenced Petitioner to: 20 years of imprisonment for Count One, which included a 10-year enhancement pursuant to O.R.C. § 2929.14(D)(2)(b); 30 days of imprisonment for Count Two; 1 year of imprisonment for Count Three; and a $100.00 fine for Count Four.  ECF Dkt. #9, Ex. C.  The judge also ordered Petitioner to reimburse the Lorain Police Department, the Lorain County Sheriff's Department, the FBI, and the Lorain County Prosecutor's Office for expenses incurred in apprehending him after he fled from sentencing.  *Id*.

**B.    First Direct Appeal**

On April 23, 2001, Petitioner filed assignments of error and a memorandum in support in the Ohio Court of Appeals for the Ninth District.  ECF Dkt. #9, Ex. D.  Petitioner presented five assignments of error:

> I.    The trial court erred in sentencing Defendant-Appellant to the maximum sentence on Count One of the indictment.

---

[1]    Although Respondent's brief does not point to a specific document reflecting this fact, Petitioner agrees with Respondent's account of the procedural history except for Respondent's representation of the date on which Petitioner filed the instant Petition.

A.  Consideration of improper information

B.  Imposition of an additional prison term as a threshold matter

C.  Imposition of the maximum sentence

II.  The trial court erred in refusing to appoint new counsel to represent Defendant-Appellant or conduct an inquiry into the potential conflict of interest after learning that Defendant-Appellant had filed a complaint with the bar association against assigned counsel, thereby violating Defendant-Appellant's Fifth, Sixth and Fourteenth Amendment rights under the United States Constitution and Article I, Section 10 of the Ohio Constitution.

III.  The trial court erred in refusing to grant Defendant-Appellant's motion to withdraw his no contest plea, thereby violating Defendant-Appellant's Fifth, Sixth and Fourteenth Amendment rights under the United States Constitution and Article I, Section 10 of the Ohio Constitution.

IV.  Defendant-Appellant was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

A.  Counsel's performance was below an objective standard of reasonability due to his failure to object to the imposition of the maximum sentence.

B.  Counsel's performance was below an objective standard of reasonability due to his failure to insist upon the appointment of new counsel.

C.  Counsel's performance was below an objective standard of reasonability due to his failure to raise the issue of the conflict of interest at the time of the hearing on the motion to withdraw plea.

V.  The trial court erred when it required Defendant-Appellant to relinquish his Fifth Amendment rights under the United States Constitution in order to assert his Sixth Amendment rights as well as violating Defendant-Appellant's rights under Article I, Section 10 of the Ohio Constitution.

*Id.* On October 17, 2001, the Ohio Court of Appeals reversed Petitioner's conviction and remanded the case for further proceedings. ECF Dkt. #9, Ex. F. The Court of Appeals held that the trial court had erred when it required Petitioner to testify at a pretrial hearing in order to make a *prima facie* showing as to the relevance, competence, and materiality of a witness he intended to call at trial. *Id*. at 4. Since Petitioner's fifth assignment of error required reversal, the Court of Appeals declined to address the remaining four assignments of error. *Id.*

### C.    Second Trial Court Adjudication

On December 27, 2001, the Lorain County, Ohio Grand Jury issued an indictment

charging Petitioner with two counts of perjury in violation of O.R.C. § 2921.11(A).  ECF Dkt.

#9, Ex. G.  The second indictment does not state the factual basis for the charges.  *See id.*  On

March 1, 2002, the trial court granted the state's request to consolidate the perjury case with the

drug possession case.  ECF Dkt. #10 at 4.[2]  On March 20, 2002, Petitioner's case proceeded to a

jury trial in the Lorain County Court of Common Pleas.  *Id.*  The jury found Petitioner guilty of

possession of cocaine with a major drug offender specification (Count 1 and Specification 1 in

Case No. 98CR052603), possession of drug abuse paraphernalia (Count 2 in Case No.

98CR052603), possession of marijuana (Count 4 in Case No. 98CR052603), and one count of

perjury (Count 1 in Case No. 01CR059567).  ECF Dkt. #17, Ex. AA.  The jury found Petitioner

not guilty of possession of criminal tools (Count 3 in Case No. 98CR052603).  *Id.*  The State of

Ohio dismissed the second count of perjury (Count 2 in Case No. 01CR059567) prior to trial.  *Id.*

On March 20, 2002, the trial court sentenced Petitioner to 10 years of imprisonment and

a $10,000.00 fine for possession of cocaine, a 10-year enhancement for the major dug offender

specification pursuant to O.R.C. § 2929.14(D)(2)(b), 30 days of imprisonment and a $250.00

fine for possession of drug abuse paraphernalia, and a $100.00 fine for possession of marijuana.

ECF Dkt. #9, Ex. H.  The judge also sentenced Petitioner to 5 years of imprisonment for perjury,

to be served consecutively with the other sentences.  ECF Dkt. #9, Ex. I.

### D.    Second Direct Appeal

On December 2, 2002, Petitioner filed assignments of error and a memorandum in

support in the Ohio Court of Appeals for the Ninth District.  ECF Dkt. #9, Ex. J.  Petitioner

presented six assignments of error:

> I.    The trial court erred when it required Defendant/Appellant to relinquish his Fifth
> Amendment rights under the United States Constitution in order to assert his
> Sixth Amendment rights, as well as violating Defendant/Appellant's rights under

---

[2]        *See supra* note 1.

Article I, Section 10 of the Ohio Constitution.

II.     The trial court erred when it refused to instruct the jury on the affirmative defense of entrapment.

III.    The trial court erred when it joined the offenses charged against the Defendant in Lorain County Court of Common Pleas Case Number 98CR052602 and Case Number 99CR054496.

IV.     The trial court erred in allowing the state to use evidence of Defendant/Appellant's silence after receiving his *Miranda* warnings as evidence of his guilt.

V.      The verdict of finding the Defendant/Appellant guilty of perjury was against the manifest weight of the evidence.

VI.     The trial court erred in sentencing Defendant/Appellant to maximum consecutive sentences.

       (a)     Imposition of additional prison term as a threshold matter.

       (b)     Imposition of the maximum sentence.

*Id*. On May 21, 2003, the Ohio Court of Appeals for the Ninth District affirmed the conviction. ECF Dkt. #9, Ex. L.

On August 1, 2003, Petitioner filed a motion for leave to file a delayed appeal in the Supreme Court of Ohio. ECF Dkt. #9, Ex. M. He stated that he would raise six assignments of error on appeal:

I.      The trial court erred when it required Defendant/Appellant to relinquish his Fifth Amendment rights under the United States Constitution in order to assert his Sixth Amendment rights, as well as violating Defendant/Appellant's rights under Article I, Section 10 of the Ohio Constitution.

II.     The trial court erred when it refused to instruct the jury on the affirmative defense of entrapment.

III.    The trial court erred when it joined the offenses charged against the Defendant in Lorain County Court of Common Pleas Case Number 98CR052602 and Case Number 99CR054496.

IV.     The trial court erred in allowing the state to use evidence of Defendant/Appellant's silence after receiving his *Miranda* warnings as evidence of his guilt.

V.      The verdict of finding the Defendant/Appellant guilty of perjury was against the manifest weight of the evidence.

VI.     The trial court erred in sentencing Defendant/Appellant to maximum consecutive sentences.

-5-

      (a)       Imposition of additional prison term as a threshold matter.

      (b)       Imposition of the maximum sentence.

*Id.* On October 8, 2003, the Supreme Court of Ohio granted leave to file a delayed appeal. ECF Dkt. #9, Ex. N. On November 7, 2003, Petitioner filed a memorandum in support of jurisdiction raising one proposition of law:

> I.      Before a trial court sentences an individual to consecutive or maximum sentences, the trial court must make the requisite findings from the bench at the sentencing hearing. *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165s.

ECF Dkt. #9, Ex. O. On March 3, 2004, the Supreme Court of Ohio reversed the Court of Appeals' judgment and remanded the case to the trial court for sentencing on the authority of *State v. Comer*, 793 N.E.2d 473 (Ohio 2003),[3] which required the trial court to make certain statutory findings on the record during a sentencing hearing. ECF Dkt. #9, Ex. Q; ECF Dkt. #10 at 6, #16 at 3.

### E.    Resentencing

On May 21, 2004, the trial court made the required findings of fact on the record and resentenced Petitioner to 10 years of imprisonment and a $10,000.00 fine for possession of cocaine, a 10-year enhancement for the major dug offender specification, 30 days of imprisonment and a $250.00 fine for possession of drug abuse paraphernalia, and a $100.00 fine for possession of marijuana. ECF Dkt. #9, Ex. R, #10 at 6, # 16 at 3. The judge did not resentence Petitioner for the perjury conviction because the Ninth District Court of Appeals deemed the original sentence valid. ECF Dkt. #9, Ex. S.

### F.    Third Direct Appeal

On September 22, 2004, Petitioner filed a third appeal in the Ninth District Court of Appeals and raised one assignment of error:

> I.      The trial court improperly sentenced appellant to an additional term of incarceration as a major drug offender, violating appellant's rights under the

---

[3]      *Comer* has since been abrogated by *State v. Foster*, 845 N.E.2d 470 (Ohio 2006).

Fifth, Sixth and Fourteenth Amendments to the United States Constitution as well as Article I, Sections 10 and 16 of the Ohio Constitution.

ECF Dkt. #9, Ex. T.  Petitioner argued that O.R.C. §§ 2929.14(D)(2)(b)(i) and (ii), the statutes under which the trial judge imposed a 10-year sentence enhancement, were unconstitutional under the U.S. Supreme Court's recent decision in *Blakely v. Washington*, 542 U.S. 296 (2004). ECF Dkt. #9, Ex. T at 8.  On October 7, 2004, the State filed a brief in opposition arguing that Petitioner's claim was procedurally barred by his failure to raise the constitutionality of O.R.C. § 2929.14 during trial and at either of his sentencing hearings.  ECF Dkt. #9, Ex. U at 5.  The state reasoned that Petitioner supported his claim with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which was decided before Petitioner's case went to trial, making his constitutional claim cognizable at the trial level.  ECF Dkt. #9, Ex. U at 5.  On March 2, 2005, the  Ninth District Court of Appeals affirmed the trial court's judgment, reasoning that Petitioner's failure to raise the issue of constitutionality of O.R.C. § 2929.14 in the trial court triggered the doctrine of *res judicata* and barred him from raising the issue on appeal.  ECF Dkt. #9, Ex. V at 3.

On April 18, 2005, Petitioner filed a memorandum in support of jurisdiction in the Supreme Court of Ohio raising one proposition of law:

> I.       A trial court that imposes a sentence by using factors which are not found by a jury or admitted by the defendant violates the defendant's rights to due process and a jury trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

ECF Dkt. #9, Ex. W.  Petitioner argued that his case presented the same issue as *State v. Foster*, Supreme Court of Ohio Case No. 2004-1568, and *State v. Quinones*, Supreme Court of Ohio Case No. 2004-1771, two cases in which the Supreme Court of Ohio had accepted jurisdiction but had not yet decided.  *Id*. at 1.  Petitioner asked the court to grant jurisdiction or, alternatively, to stay the proceedings in his case pending the rulings in *Foster* and *Quinones*.  *Id*. at 5.  On August 10, 2005, the Supreme Court of Ohio summarily dismissed Petitioner's appeal as not involving any substantial constitutional question.  ECF Dkt. #9, Ex. X.

## G.    Federal Habeas Corpus Petition

On January 5, 2007, Petitioner, through counsel, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  Petitioner presents one ground for

relief:

> 1.  Randy Charlton was improperly sentenced under Ohio's Major Drug Offender (MDO) statute.  At the May 21, 2004 resentencing, following a remand from the Ohio Supreme Court (Case No. 2003-1490), the trial court imposed a ten-year MDO "add-on" sentence based on factual findings that were neither found by a jury, nor admitted by Mr. Charlton.

ECF Dkt. #1 at 5.  On January 24, 2007, the case was assigned to the undersigned for a report and recommendation.  ECF Dkt. #6.  On March 30, 2007, Respondent filed a return of writ.  ECF Dkt. #10.  On July 20, 2007, Petitioner filed a traverse.  ECF Dkt. #16.

## II.  PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.  Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not an issue in this case.  *See* ECF Dkt. #1, 10, 16.  Respondent does, however, contend that Petitioner has procedurally defaulted on his claimed ground for relief.  ECF Dkt. #10 at 8-13.

### B.  Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied  "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must

-8-

present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.) cert. denied, 509 U.S. 907 (1993)(quotation omitted).

Unless an exception applies, the Court must dismiss a petition for lack of exhaustion if it contains at least one issue that was not presented to the state courts so long as a remedy is still available for the petitioner to pursue in the state courts.  *Rose v. Lundy*, 455 U.S. 509, 518-20 (1982).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court

has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

(1) whether the petitioner failed to comply with an applicable state procedural rule;

(2) whether the state courts actually enforced the state procedural sanction;

(3) whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4) if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

As set forth in the last factor of the *Maupin* test, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th

-10-

Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice.  *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D.Ohio, 2004).  The above standards apply to the Court's review of Petitioner's claims.

## III.  STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 5, 2007, well after the act's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> > (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.; see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.      Decisions of lower federal courts may not be considered.

B.      Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.      The state court decision may be overturned only if:

    1.      It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,'[existing at the time of the petitioner's direct appeal] or;

    2.      the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

    3.      'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

    4.      the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or

-12-

        unreasonably refuses to extend that principle to a new context where it should apply.'

D.     Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.     Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §

2254(e)(1).

## IV.   ANALYSIS

This case presents two issues: (1) whether Petitioner waived his right to challenge the constitutionality of his May 21, 2004 ten-year sentence enhancement by failing to raise the objection in the trial court; and (2) whether Petitioner's sentence is contrary to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Ring v. Arizona*, 536 U.S. 582 (2002), and *Blakely v. Washington*, 542 U.S. 269 (2004).  The undersigned finds that Petitioner has not waived his right to challenge the constitutionality of his sentence enhancement because, following its decision in *State v. Foster*, 845 N.E.2d 470 (Ohio 2006),  the Ohio Supreme Court has regularly remanded cases for resentencing where a defendant had been sentenced prior to *Blakely*.  *See  See State of Ohio v. Buchanan*, No. 05 MA 60, 2006 WL 3059911, *6-*8 (Ohio App. 7 Dist. Oct. 26, 2006), unreported (discussed below); *Noland v. Hurley*, No. 2:05-CV-682, 2007 WL 3047230, *8 (S.D. Ohio, Oct. 18, 2007), unreported.  The undersigned also finds that Petitioner's sentence enhancement violates the Sixth Amendment to the U.S. Constitution because the trial judge imposed the sentence base upon findings of fact neither found by a jury nor admitted by Petitioner.  *See Apprendi*, 530 U.S. at 490; *Blakely*, 542 U.S. at 303.

### A.   Petitioner's case is not procedurally barred.

#### (i)   Petitioner's *Blakely* claim is cognizable in a habeas corpus petition because his disposition was not final until after *Blakely* was decided.

Challenges under *Blakely* are not cognizable in collateral proceedings if the Petitioner's sentence became final on direct review before *Blakely* was announced.  *See Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005) (*Booker* does not apply retroactively in collateral proceedings in cases where  the petitioner's conviction became final on direct review before the *Booker* decision); *Bridges v. Bradshaw*, No. 1:04 CV 117, 2007 WL 2571931, *10  (N.D. Ohio Aug. 31, 2007), slip op.  In the case at bar, Petitioner's conviction did not become final until August 10, 2005,  after the Supreme Court of Ohio declined jurisdiction to hear his third direct appeal.  ECF Dkt. #9, Ex. X.  At that time, *Blakely* had already been decided.  Moreover,

-14-

Petitioner raised a *Blakely* claim during his direct appeal.  ECF Dkt. #9, Ex. T at i, 8,9,10,11, Ex. W. at 1-5. Therefore, his *Blakely* claim is cognizable in the instant petition.

>    **(ii)** **Petitioner's claim cannot be dismissed for failure to exhaust state court remedies because he has no available remedies remaining.**

Petitioner has not pursued a petition for post conviction relief or a petition for a writ of habeas corpus from the Supreme Court of Ohio.  Pursuing these petitions would have been futile because the Ohio Court of Appeals barred Petitioner's *Blakely* claim under the doctrine of *res judicata*, and the Supreme Court of Ohio declined jurisdiction even though Petitioner argued that his case was similar *Foster*, which was *sub judice*.  Therefore, Petitioner's failure to pursue the remedy is not detrimental to the instant case.  *See Fields v. Bagley*, 275 F.3d 478, 482-83 (6th Cir. 2001); *Tuggle v. Seabold*, 806 F.2d 87, 91 (6th Cir. 1986).

Assuming for the moment that the Ohio Court of Appeals was correct in denying Petitioner's *Blakley* claim on procedural grounds, his claim cannot be dismissed for failure to exhaust state remedies if he is procedurally barred from further pursuing state remedies; the appropriate procedural bar would be procedural default.  *See Gray v. Netherland*, 518 U.S. 152, 61 (1996); *Engle v. Isaac*, 456 U.S. 107, 125, n.5 (1982); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).  The Supreme Court has held that the district court cannot dismiss a petition for failure to exhaust state court remedies if there is no remedy available for the petitioner to pursue in state courts because such a dismissal assumes that remedies are still available for the petitioner to pursue.  *Id*.  Therefore, the pertinent question is whether procedural default applies.

>    **(iii)** **Petitioner has not waived his right to challenge the constitutionality of his May 21, 2004 sentence under *Apprendi* and *Blakely* because Ohio courts do not regularly enforce *res judicata* in cases similar to the one at bar.**

In this case, procedural default does not apply because the second prong of the *Maupin* test, whether the state courts actually enforced the state procedural sanction, has not been satisfied when the Ohio Supreme Court has regularly remanded similar cases for resentencing even if the sentence was imposed following *Blakely*.  *See Buchanan*, 2006 WL 3059911, *6-*8

(discussed below).

**(a)** **Synopsis of the relevant Sixth Amendment case law**.

As a preliminary matter, it is necessary to review the substantive Sixth Amendment case law that is applicable to Petitioner's case. Prior to Petitioner's sentencing, the U.S. Supreme Court decided *Apprendi* and held that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490. While Petitioner's case was pending on direct appeal to Ohio's Ninth District Court of Appeals, the U.S. Supreme Court decided *Blakely* and held that the statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant, and not the maximum sentence a judge may impose after finding additional facts. *Blakely*, 542 U.S. at 303. On February 27, 2006, the Supreme Court of Ohio consolidated four criminal cases in an opinion styled *State v. Foster* and held, *inter alia*, that O.R.C. §§ 2929.14(D)(2)(b) and (D)(3)(b) "cannot withstand a *Blakely* challenge, because judicial fact-finding is required, and a court may not add the additional penalties [that O.R.C. §§ 2929.14(D)(2)(b) and (D)(3)(b) require] based solely on the jury's verdict." *Foster*, 845 N.E.2d at 493-94.

Although *Foster* is a state court case that does not affect the substance of federal habeas corpus law, *see* 28 U.S.C. § 2254(d)(1), it is an important case for procedural default purposes because it has affected Ohio's application of *res judicata*. Therefore, a review of its holding is necessary. One of the *Foster* defendants, Jeannett Horn, had been convicted of drug possession, and the trial court found that she was a major drug offender due to the amount of drugs involved-more than 100 grams of crack cocaine. *Id*. at 482. The *Foster* court noted the difference in the relevant sentencing statutes:

> For the major drug offender, R.C. 2929.14(D)(3)(a) requires that a ten-year term be imposed, and that term cannot be reduced. The determination that a defendant is a major drug offender is dependent upon the amount of the controlled substance. Subsection (b), however, provides: " *The court * * * may impose an additional prison term* of one, two, three, four, five, six, seven, eight, nine, or ten years, *if the court*, with respect to the term

> imposed under division (D)(3)(a) of this section and, if applicable, divisions (D)(1) and (2) of this section, *makes both of the findings* set forth in divisions (D)(2)(b)(i) and (ii) of this section."

*Id*. at 493 (emphasis original).  In Horn's case, the jury determined that she possessed in excess of 100 grams of crack cocaine.  *Id*.  Thus, the court's finding that Horn was a Major Drug Offender under O.R.C. § 2929.14(D)(3)(a) was based on the jury's verdict and did not offend *Blakely*.  *Id*. The court stated, however, that any additional penalty under O.R.C. § 2929.14(D)(3)(b) would have required judicial fact-finding and would have violated *Blakely*.  *Id*.  Because Horn did not receive any additional penalty, her sentence complied with *Blakely*.  *Id*.

**(b)**      **Petitioner has a colorable *Blakely* claim.**

In the instant case, the trial judge found Petitioner to be a Major Drug Offender, as defined in O.R.C. § 2929.14(D)(3).  ECF Dkt. #9 , Ex. R.  Pursuant to O.R.C. § 2929.14(D)(2)(b), the judge sentenced Petitioner to a 10 year term of imprisonment beyond the 10 year maximum sentence allowed for a conviction under O.R.C. § 2925.11(A).  *Id*.  The jury in Petitioner's trial had found that Petitioner was a Major Drug Offender under O.R.C. § 2929.01(Y), but it made no finding with respect to O.R.C. §§ 2929.14(D)(2)(b) or (D)(3)(b).  ECF Dkt. #9, Ex. A at 1; #16 at 2; #17, Ex. AA.  At the time of Petitioner's sentencing, O.R.C. § 2929.14(D)(3)(b)  provided:

> *The court imposing a prison term* on an offender under division (D)(3)(a) of this section *may impose an additional prison term* for one, two, three, four, five, six, seven, eight, nine, or ten years, *if the court*, with respect to the term imposed under division (D)(3)(a) of this section, ...*makes both of the findings set forth in divisions (D)(2)(b)(i) and (ii) of this section*.

ECF Dkt. #16 at 6 (emphasis added).  At that time, O.R.C. § 2929.14(D)(2)(b) provided:

> (i) The terms so imposed are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.

> (ii) The terms so imposed are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense.

-17-

ECF Dkt. #16 at 7. O.R.C. § 2929.12 required the sentencing judge to make various findings of fact related to the offense. *See Foster*, 845 N.E.2d at 484-485 for a detailed explanation of O.R.C. § 2929.12 factors. Based upon the requirement that the trial court make findings of fact during sentencing, the trial court's judgment entry invoking O.R.C. § 2929.14(D)(2)(b) (ECF Dkt. #9, Ex. R), and the fact that the jury made no findings of fact with respect to O.R.C. §§ 2929.14(D)(2)(b) or (D)(3)(b), the undersigned finds: (1) that the trial judge made findings of fact beyond those determined by the jury; and (2) the trial judge used facts not found by a jury in determining that a 10-year enhancement was appropriate. At this point, it appears that Petitioner has a cognizable claim under *Blakely*. The undersigned will further analyze the merits of the claim after completing a *Maupin* analysis to determine if Petitioner's claim is procedurally barred. *See infra* § IV(B).

### (c)    Procedural default analysis: procedural default does not apply for two reasons.

Having reviewed the pertinent case law forming the basis of Petitioner's claim, the undersigned will now determine whether procedural default applies. Respondent contends that the cases upon which Petitioner relies for challenging his sentence, *Apprendi*, *Ring*, and *Blakely*, were decided prior to Petitioner's sentencing. ECF Dkt. #10 at 8. Respondent further contends Petitioner's constitutional challenge is now waived because he did not raise an objection based on existing case precedent in the trial court. *Id.* It is important to note, as Respondent acknowledges later in her return of writ, that the U.S. Supreme Court decided *Blakely* on June 24, 2004, **after** Petitioner was sentenced on May 21, 2004. *Blakely*, 542 U.S. 296; ECF Dkt. #9, Ex. R, #10 at 6, 13, # 16 at 3. The other two cases predate Petitioner's sentencing hearing; *Apprendi* was decided on June 26, 2000, and *Ring* on June 24, 2002. *Apprendi*, 530 U.S. 466; *Ring*, 536 U.S. 582. The issue, therefore, is whether Petitioner was procedurally barred in the Ohio courts under the *Maupin* test for failing to raise the constitutionality of his sentence under *Apprendi* and *Ring*.

The undersigned finds that procedural default does not apply for two reasons: (1) the Ohio courts' last explained opinion predates significant changes in Ohio's procedural law following

-18-

*Foster*; and (2) the Ohio Ninth District Court of Appeals' application of *res judicata* to *Blakely*

claims is inconsistent with *Foster* and its progeny.

> **(1)    Procedural default does not apply because the Ohio courts' last reasoned opinion predates significant changes in Ohio's procedural laws following *Foster*.**

In the case at bar, the Ohio Supreme Court declined jurisdiction summarily.  Therefore,

the Court must look to the Ohio Court of Appeals' decision to determine if the state invoked an

adequate procedural bar.  *Munson*, 384 F.3d at 314.  A State procedural ground is not adequate

unless it is "strictly or regularly followed."  *Chambers v. Million*, No. 99-6363, 2001 WL 873743,

*3 (6th Cir. July 24, 2001), unreported, citing *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988);

*Dugger v. Adams*, 489 U.S. 401, 418 (1989) citing *Barr v. City of Columbia*, 378 U.S. 146, 149

(1964).  Moreover, a state procedural bar must be applied evenhandedly to all similar claims.

*Dugger*, 489 U.S. at 420-21; *Harris v. Reed*, 489 U.S. 255, 277-78 (1989).   The Ohio Court of

Appeals barred Petitioner's claim under the doctrine of *res judicata* because he had not raised the

issue of the constitutionality of his sentence in the trial court.  ECF Dkt. #9, Ex. V at 3.  The Ohio

Court of Appeals did not address the fact that *Blakely* was decided after Petitioner's sentencing

hearing even though Petitioner had raised a *Blakely* claim in his appellate brief.  *Id*.; ECF Dkt. #9,

Ex. T at 8-11.  Moreover, the Ohio Court of Appeals applied *res judicata* to Petitioner's case

before the Supreme Court of Ohio announced *Foster* and spurred remands in multiple similar

cases.  *Id*.; *see  Buchanan*, 2006 WL 3059911 at *6-*8.

As the Ohio Seventh District Court of Appeals has noted, the Supreme Court of Ohio has

freely remanded cases for resentencing following its decision in *Foster*:

> [T]he principles of waiver do not apply to Foster.
>
> ... Foster and its progeny created an exception to the doctrine of waiver. Many of the cases the Ohio Supreme Court has remanded pursuant to *Foster* involved post- *Blakely* sentencing dates. Yet, the Ohio Supreme Court gave no indication whether *Blakely* issues were raised to the trial court. Instead, it has unlimitedly remanded the cases. *See State v. Moser*, 5th Dist. No. 05CA39, 2006-Ohio-165 (sentencing took place on April 20, 2005); *State v. Bryant*, 9th Dist. No. 22723, 2006-Ohio-517 (sentencing took place on May 9, 2005), *State v. Kendrick*, 2d Dist No. 20965, 2006-Ohio-311 (sentencing took place on March 9, 2005), *State v. Phipps*, 8th. Dist. No. 86133, 2006-Ohio-99 (sentencing took

-19-

place on March 3, 2005); *State v. Hampton*, 10th Dist. No. 04AP-806, 2005-Ohio-7063 (sentencing took place on July 12, 2004), *State v. Herbert*, 3d Dist No. 16-5-08, 2005-Ohio-6869 (sentencing took place on May 24, 2005); *State v. Wassil*, 11th Dist. No.2004-P-0102, 2005-Ohio-7053 (sentencing took place on October 18, 2004); *State v. Cottrell*, 7th Dist. No. 04CO53, 2005-Ohio-6923 (sentencing took place on September 3, 2004). This is just a small representative sample of cases from eight different appellate courts which affirmed sentences in which the defendant was sentenced post- *Blakely*, and in which the Ohio Supreme Court later reversed the sentences and remanded for resentencing under Foster.

The above cited cases contain no clear indication that *Blakely* issues were preserved for review. Yet, a review of the cases seems to indicate that they were not. In both the *Phipps* (Eighth Appellate District) and *Kendrick* (Second Appellate District) cases, it does not appear that *Blakely* issues were raised to the appellate courts. In neither of those decisions is *Blakely* even mentioned. **Thus, it appears as if *Blakely* was raised for the first time to the Ohio Supreme Court and yet the Court still reversed and remanded that case for resentencing pursuant to *Foster*.**

**If that were not enough for this court to conclude that the doctrine of waiver is inapplicable to *Foster* issues, in *Cottrell*, *Blakely* issues were not raised to the trial court. Yet, the Ohio Supreme Court still reversed and remanded the case for resentencing pursuant to *Foster*.** Thus, the Supreme Court's reversal and remanding of *Cottrell* for resentencing based on Foster is a clear indication that Foster is a special case in which the doctrine of waiver is inapplicable.

Accordingly, considering all the above, we agree with the Sixth Appellate District and hold that the doctrine of waiver is inapplicable to Foster issues.

*Buchanan*, 2006 WL 3059911 at *6-*8 (emphasis added). Based upon the *Buchanan* court's account of Ohio case law, the undersigned finds that Ohio Courts do not enforce the procedural bar of *res judicata* in cases where the defendant failed to raise a *Blakely* claim even if the defendant was sentenced post-*Blakely*. Since the Supreme Court of Ohio has "unlimitedly remanded" these cases, it would follow that a defendant sentenced pre-*Blakely* could not have waived his *Blakely* claim because he could not be expected to predict the U.S. Supreme Court's ruling in *Blakely*.

> **(2)     Procedural default does not apply because the Ohio Ninth District Court of Appeals' application of *res judicata* to *Blakely* claims is inconsistent with *Foster*, and therefore violates *Dugger*.**

The *Dugger* case shows that a state's disparate treatment of similar claims is not a procedural bar to this Court's review. In *Dugger*, a man was convicted of first-degree murder,

and the trial judge sentenced him to death based upon the jury's recommendation. *Dugger*, 489 U.S. at 404. After the *Dugger* petitioner's direct appeals, state collateral appeals, and federal habeas corpus petition were denied, the U.S. Supreme Court decided *Caldwell v. Mississippi*, 472 U.S. 320 (1985), and held that remarks by a prosecutor in a capital case that misinformed the jury as to the role of appellate review violated the Eighth Amendment. *Dugger*, 489 U.S. at 405. The petitioner in *Dugger* filed another state petition for post conviction relief, and the Florida Supreme Court held that he was barred from raising the issue because he had not raised it on direct appeal. *Id*. at 416. The U.S. Supreme Court addressed the merits of the petition because the Florida Supreme Court did not invoke a procedural bar in three similar cases where defendants had not raised *Caldwell* on direct appeal. *Id*. at 419-21.

The Ohio Ninth District Court of Appeals' application of *res judicata* in the instant case violates *Dugger* because the same court has applied the procedural bar in a manner inconsistent with *Foster* and its progeny by requiring defendants with cases pending on appeal when *Foster* was announced to preserve *Blakely* challenges in the trial court. Following its judgment in Petitioner's case, the Ninth District acknowledged the *Foster* court's rejection of the state's argument that a defendant waived his *Blakely* claim by failing to raise it in the trial court. *State v. Dudukovich*, No. 05CA008729, 2006 WL 709102, *4 (Ohio App. 9th Dist. Mar. 22, 2006), unreported. The *Dudukovich* court stated that, prior to *Foster*, a defendant had to raise the constitutionality of Ohio sentencing statutes in the trial court or that argument was waived. *Id*. at *5. The court added that *Foster* never implored trial courts to abandon their ordinary procedural doctrines. *Id*. Therefore, the court concluded, it should apply its ordinary prudential doctrines, and a defendant could not raise a constitutional challenge under *Blakely* unless he had raised the constitutionality of his sentence in the trial court. *Id*. In reaching that conclusion, the *Dudukovich* court reasoned that the *Foster* court "followed the path laid out by *Booker,*" which stated:

> As these dispositions indicate, we must apply today's holdings-both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act-to all cases on direct review. That fact does not mean that we believe that every sentence gives rise to a Sixth Amendment violation. Nor do we believe that every appeal will lead to a new sentencing

> hearing. That is because we expect reviewing courts to apply ordinary prudential
> doctrines, *determining, for example, whether the issue was raised below* and whether it
> fails the 'plain-error' test." (Emphasis added; internal citations omitted.)

*Id*. citing *Booker*, 543 U.S. at 268.  The undersigned fails to see how the *Dudukovich* court

reached its conclusion that the *Foster* court intended lower courts to apply *res judicata* in cases

where a defendant had not raised a constitutional claim in the state court.  First, in ordering

resentencing, the *Foster* court, unlike the *Booker* Court, did not state that the reviewing courts

should apply procedural bars in the manner the *Dudukovich* court did.  The *Foster* court stated:

> These cases and those pending on direct review must be remanded to trial courts for new
> sentencing hearings not inconsistent with this opinion. *We do not order resentencing
> lightly. Although new sentencing hearings will impose significant time and resource
> demands on the trial courts within the counties, causing disruption while cases are
> pending on appeal, we must follow the dictates of the United States Supreme Court.* Ohio's
> felony-sentencing code must protect Sixth Amendment principles as they have been
> articulated.

*Foster*, 845 N.E.2d at 499 (emphasis added).  The emphasized language in the foregoing quote

demonstrates the Supreme Court of Ohio's expectation that many cases would be remanded for

sentencing under *Foster*; this language supports the undersigned's conclusion that the Supreme

Court of Ohio did not intend for *res judicata* to apply to *Blakely* challenges even when a

defendant did not preserve a constitutional challenge to his sentence.  Second, the *Foster*

judgment itself shows that the court did not intend waiver to apply to pending *Blakely* claims.

The *Foster* court stated: "Foster could not have relinquished his sentencing objections as a known

right when no one could have predicted that *Blakely* would extend the *Apprendi* doctrine to

redefine 'statutory maximum,'" and the court ultimately reversed Foster's conviction.  *Id*. at 483,

499.  The undersigned's review of the *Foster* opinion, Defendant Foster's memorandum in

support of jurisdiction,[4] his brief on the merits,[5] the State of Ohio's brief on the merits,[6] and

---

[4]     2004 WL 5303217 (Sept. 20, 2004).

[5]     2005 WL 1534500 (Apr. 18, 2005).

[6]     2005 WL 1534504 (May 12, 2005).

-22-

Foster's reply brief[7] shows no indication that *Foster* raised any constitutional objection to his sentence in the trial court.  In fact, Foster admitted that he had not objected to his sentence in the trial court.  Foster's Reply Br., 2005 WL 5406334 at *2.  Moreover, Foster was sentenced on September 25, 2004, **after** *Blakely* was announced, and the Supreme Court of Ohio still rejected the state's waiver argument.  *Foster*, 845 N.E.2d at 483; Foster's Merit Br., 2005 WL 1534500 at *1. Consequently, the *Foster* court's holding, read in light of the filings, shows that the Supreme Court of Ohio did not intend for lower courts to apply *res judicata* to cases then pending on appeal.  This conclusion is supported by the *Buchanan* court's review of the cases the Supreme Court of Ohio has "unlimitedly remanded" and by the Southern District of Ohio's observation that the Supreme Court of Ohio has remanded cases pending at the time of the *Foster* decision "without regard to whether the defendant had properly preserved a *Blakely* claim."  *Nesser v. Wolfe*, No. 2:06-cv-546, 2007 WL 1792255, *10 (S.D. Ohio June 19, 2007), unreported.

Following *Dudukovich*, the Ninth District Court of Appeals articulated its procedural rule: "an appellant, if sentenced **after** *Blakely*, waives his constitutional challenge to his sentence if he d[id] not preserve the argument in the trial court."  *State v. Elwell*, No. 06CA008923, 2007 WL 1804977, *8 (Ohio App. 9th Dist. June 25, 2007), unreported (emphasis added).  In *Elwell*, the Ninth District held that a defendant sentenced post-*Blakely* (on April 17, 2006) had not preserved a challenge to O.R.C. § 2929.14(D)(2)(b).  *Elwell*, 2007 WL 1804977 at *2,*8.  The Ninth District remanded an earlier case where a defendant attacked O.R.C. § 2929.14(D)(2)(b) on *Blakely* grounds after he was sentenced post-*Blakely* (June 2, 2005) and had challenged the constitutionality of his conviction in the trial court.  *State v. Brown*, No. 22770, 2006 WL 1009007, *1, *4 (Ohio App. 9th Dist. Apr. 19, 2006), unreported.  Following *Dudukovich*, *Elwell*, and *Brown*, it appears that the Ninth District's rule for determining if *Blakely* claims is procedurally barred would not apply to Petitioner because he was sentenced pre-*Blakely*.  The Court is therefore left to speculate as to how the Ninth District would treat Petitioner's claim arising from a pre-*Blakely* sentence in light of the *Foster* opinion.  Consequently, the Ninth

---

[7]        2005 WL 5406344 (June 1, 2005).

-23-

District's application of *res judicata* to Petitioner's case before *Foster* was announced cannot be an adequate procedural bar to foreclose this Court's review.

> **(d)** **The Supreme Court of Ohio's summary denial of jurisdiction should not affect the ultimate outcome of this case because the judgment is not explained.**

Although Ohio's last explained judgment in this case came from the Ninth District Court of Appeals, this Court should take cognizance of the unique procedural circumstances surrounding the Supreme Court of Ohio's denial of jurisdiction. Those circumstances, however, should not ultimately affect this Court's finding regarding procedural default because the Supreme Court of Ohio's opinion is not explained and leaves the Court to speculate as to the reasons the Supreme Court of Ohio relied upon in declining jurisdiction. Petitioner filed an appeal in the Supreme Court of Ohio while the *Foster* case was pending. *See Foster*, 845 N.E.2d at 470; ECF Dkt. #9, Ex. W. He asked the court to grant jurisdiction or hold his case in abeyance because the issues he raised were similar to those the court would be deciding in *State v. Foster*. ECF Dkt. #9, Ex. W. at 1-2, 5. The Supreme Court of Ohio rejected jurisdiction and did not stay proceedings in Petitioner's case pending its decision in *Foster*. ECF Dkt. #9, Ex. X. One could argue the Supreme Court of Ohio found that Petitioner's claims to be distinguishable from the other claims the court has "unlimitedly remanded." That argument could be supported by the fact that the court demonstrated its cognizance of the potential impact of *Blakely* on O.R.C. § 2929.14(D)(3)(b) by accepting jurisdiction over Jeannett Horn's case, but the court still declined to hear Petitioner's case. *See Foster*, 845 N.E.2d 470.

On the other hand, the Supreme Court of Ohio explicitly rejected the state of Ohio's waiver argument with regard to Defendant Foster, who was sentenced post-*Blakely* and admitted he had not challenged his sentence in the state trial court. *Foster*, 845 N.E.2d at 483; Foster's Reply Br., 2005 WL 5406334 at *2. Regardless of any hypothetical reasons the court may have considered in declining jurisdiction, the Supreme Court of Ohio's unexplained dismissal leaves this Court to speculate as to why the Supreme Court of Ohio procedurally barred Petitioner from raising a claim under the subsequently decided *Blakely* case but then remanded a litany of cases

-24-

adjudicated after *Blakely* without regard as to whether the defendant had preserved a *Blakely* claim.  The court did not explain how Petitioner's case is different from Foster's, Horn's,[8] or any of the others that followed.  Simply put, the Supreme Court of Ohio has not invoked its procedural bar evenhandedly in similar cases — a violation of *Dugger*.

Since the Supreme Court of Ohio declined jurisdiction in the instant case, it is also worth noting that the Southern District of Ohio held that a petitioner's claim was procedurally defaulted when the Supreme Court of Ohio declined review of a *Blakely* claim.  *Nesser*, 2007 WL 1792255, *10.  The petitioner in *Nesser* did not appeal the Ohio Court of Appeals' decision affirming his conviction to the Supreme Court of Ohio.  *Id*. at *4.  He first raised a *Blakely* claim in a petition for post conviction relief on August 1, 2005, over a year after *Blakely* was decided.  *Id*. at *4.  The *Nesser* petitioner then filed a habeas corpus petition in the Supreme Court of Ohio on April 4, 2006, nearly two years after *Blakely* was decided.  *Id*.  The *Nesser* case is distinguishable from the case at bar because the petitioner in *Nesser* had his direct appeal reopened pursuant to Ohio Appellate Rule 26(B) on February 15, 2005, well after *Blakely* was announced, and he failed to raise a *Blakely* claim at any point during that direct appeal.  *Id*. at *4.  The instant Petitioner's failure to raise a *Blakely* claim in the trial court before *Blakely* was announced is more understandable than the *Nesser* petitioner's failure to raise the issue on direct appeal over seven months after *Blakely* had been announced.  This observation, however, implicates recent Sixth Circuit precedent in *Nichols v. U.S.*, ___ F.3d ___, No. 05-6452, 2007 WL 2326051, *4 (Aug. 16, 2007), slip op. (petition for *en banc* review filed on Oct. 5, 2007).

### (e)  *Nichols* should not affect procedural default analysis.

In *Nichols*, the Sixth Circuit held that counsel was ineffective for failing to be cognizant of possible extensions of *Apprendi* to the Federal Sentencing Guidelines, even though the U.S. Supreme Court did not decide *U.S. v. Booker*, 543 U.S. 220 (2005), until two years after his client was sentenced.  *Nichols*, 2007 WL 2326051 at *4.  Along the same line of reasoning, Respondent

---

[8]     Although the *Foster* court ultimately affirmed Defendant Horn's sentence, it did not bar her argument on procedural grounds.  *Foster*, 845 N.E.2d at 493-94.

-25-

contends that Petitioner's claim is procedurally barred because the claim was cognizable under *Apprendi* and *Ring* at the time Petitioner was sentenced.[9]  ECF Dkt. #10 at 12-13.  This argument comports with *Nichols*, but ultimately fails as a matter of Ohio's procedural law.  Although *Nichols* contradicts *Buchanan*, the Court should give *Buchanan* and *Foster*'s progeny of cases controlling weight when conducting a *Maupin* analysis because *Buchanan* and *Foster*'s progeny of cases  are the embodiment of Ohio procedural law as it pertains to *Blakely* claims.  *Nichols* has had no effect on how Ohio state courts enforce their procedural rules.  While Respondent's assertion that Petitioner's claims were cognizable under *Apprendi* may be true, it does not change the fact that the Ohio courts have chosen not to enforce the procedural rule in cases similar to the one at bar.

### (f)    Conclusion: Procedural default does not apply.

For the foregoing reasons, the undersigned finds that the Ohio courts' last explained opinion does not invoke an adequate procedural bar to foreclose this Court's review.  Consequently, the undersigned recommends that the Court address the merits of the instant petition.

### B.    The Court should grant the instant petition because Petitioner's sentence violates the Sixth Amendment of the U.S. Constitution.

When the trial court imposed a 10-year sentence enhancement pursuant to O.R.C. § 2929.14(D)(2)(b), it violated Petitioner's Sixth Amendment right to trial by jury; therefore, the Court should grant the instant petition and remand Petitioner's case to the Ohio Court of Common Pleas for resentencing.  *See Blakely*, 542 U.S. at 303.  As previously discussed, O.R.C. §§ 2929.12, 2929.14(D)(2)(b) and 2929.14(D)(3)(b) required the trial judge to make specific factual findings and conclude that Petitioner possessed a great likelihood of recidivism or that Petitioner's conduct was more serious than conduct normally constituting the offense.  Since the

---

[9]       To be clear, Respondent does not cite *Nichols* in her return of writ.  *See* ECF Dkt. #10.  The undersigned has analyzed Respondent's argument *sua sponte* under *Nichols*.

-26-

*Foster* court determined as a matter of Ohio state law that O.R.C. §§ 2929.14(D)(2)(b) and

(D)(3)(b) required judicial factfinding prior to the imposition of sentence enhancements, the

Court should adopt its holding and analysis.  The pertinent part of the *Foster* Court's analysis is

as follows:

> Certain aspects of Ohio's felony-sentencing plan are unconstitutional when measured against the Sixth Amendment principles established in *Blakely*. The reason for this is that, like many state legislatures that attempted sentencing reform, **the Ohio General Assembly, through its enactment of S.B. 2 in 1996, authorized narrower sentencing ranges and restricted the discretion of trial judges by mandating that underlying "findings" be made before increasing what seems to be a presumptive sentence.** In other words, the sentence is not determined "solely on the basis of facts reflected in the jury verdict or admitted by the defendant," as *Blakely* requires. [*Blakely*, 542 U.S. at 303.]

> The parties have raised five separate sentencing areas as questionable when they are measured against *Blakely*: . . . (5) imposing repeat-violent-offender or major-drug-offender enhancements. **We agree with respect to four of the five that Ohio judges are not merely advised to consider certain sentencing factors, but are statutorily required to make specific findings before imposing a sentence beyond that presumed solely by a jury verdict or admission of a defendant.**

> In conducting a *Blakely* analysis, we must determine whether a presumptive sentence is created and whether judicial fact-finding is required to exceed that sentence. Stated another way, is the sentence allowed simply as a result of a conviction or plea or must the judge find additional facts first?

> \* \* \*

> Adams challenges his sentence enhancement as a repeat violent offender and Horn contests her penalty enhancement as a major drug offender, as being violative of *Blakely*. **Unlike all other penalty-enhancing specifications, the court, not the jury, makes the necessary factual findings for convicting the offender of being a repeat violent offender or a major drug offender. See R.C. 2941.149(B) and 2941.1410(B).**

> \* \* \*

> Subsection (D)(2)(b) . . . states:

>> "*[T]he court may impose* on the offender *an additional definite prison term* of one, two, three, four, five, six, seven, eight, nine, or ten years *if the court finds that both of the following apply* \* \* \*:

>>> "(i) The terms so imposed are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section

-27-

2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.

"(ii) The terms so imposed are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense." (Emphasis added.)

**This section requires the court to make findings before imposing an additional penalty on repeat violent offenders and thus violates *Blakely*.**

For the major drug offender, R.C. 2929.14(D)(3)(a) requires that a ten-year term be imposed, and that term cannot be reduced. The determination that a defendant is a major drug offender is dependent upon the amount of the controlled substance. **Subsection (b), however, provides: " *The court * * * may impose an additional prison term* of one, two, three, four, five, six, seven, eight, nine, or ten years, *if the court*, with respect to the term imposed under division (D)(3)(a) of this section and, if applicable, divisions (D)(1) and (2) of this section, *makes both of the findings* set forth in divisions (D)(2)(b)(i) and (ii) of this section." (Emphasis added.)**

As with R.C. 2929.14(D)(2)(b), R.C. 2929.14(D)(3)(b) cannot withstand a *Blakely* challenge, because judicial fact-finding is required, and a court may not add the additional penalties based solely on the jury's verdict.

For example, in Horn's case, the jury determined that she possessed in excess of 100 grams of crack cocaine. Thus, the court's finding that she was a major drug offender is based on the jury's verdict. R.C. 2929.14(D)(3)(a) mandates that she receive the longest term; therefore, her 10-year sentence does not offend *Blakely*. **However, any additional penalty under R.C. 2929.14(D)(3)(b) would have required judicial fact-finding and would have violated *Blakely*.** Because Horn did not receive any additional penalty, her sentence complies with *Blakely*.

*Foster*, 845 N.E.2d at 489-94 (emphasis added).  Based upon the Supreme Court of Ohio's interpretation of Ohio's statutory law, the undersigned encourages the Court to adopt the holding in *Foster* that O.R.C. §§ 2929.14(D)(2)(b) and (D)(3)(b), as they existed, violated *Blakely* because they required judicial fact-finding, and a court could impose additional penalties under O.R.C. §§ 2929.14(D)(2)(b) and (D)(3)(b) based solely on the jury's verdict.  *Foster*, 845 N.E.2d at 493-94.

Applying *Foster* to the case at bar, it is clear that the trial court's decision of imposing a 10-year sentence enhancement, pursuant to O.R.C. § 2929.14(D)(2)(b), based upon facts the jury had not found and Petitioner had not admitted is contrary to clearly established Federal law determined by the Supreme Court of the United States.  *See Blakely*, 542 U.S. at 303.  Therefore, Petitioner's case should be remanded for resentencing in order to correct the violation of Petitioner's Sixth Amendment right to trial by jury.  28 U.S.C. § 2254(d).

**V. CONCLUSION**

For the foregoing reasons, the undersigned recommends that the Court GRANT the instant petition and REMAND Petitioner's case to the Ohio Court of Common Pleas for RESENTENCING.

Date: November 13, 2007                    **/s/ George J. Limbert**
                                           George J. Limbert
                                           United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).